# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PATRICIA D. SANCHEZ, | ) | 1:06cv1275 LJO DLB |
| | ) | |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## **BACKGROUND**

Plaintiff Patricia D. Sanchez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.[1]

---

[1] Due to the recent appointment of Judge Lawrence J. O'Neill to the position of United States District Judge, this case was reassigned to the Honorable Dennis L. Beck on October 9, 2007.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her applications for disability insurance benefits and supplemental security income in October 2003, alleging disability since June 24, 2003, due to rheumatoid arthritis, fibromyalgia, spinal problems and pain in her hands, wrists and back. AR 69-72, 84-93, 423-426. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 42-45, 48-55, 54. On October 25, 2005, ALJ Sean Teehan held a hearing. AR 443-506. ALJ Teehan denied benefits on March 30, 2006. AR 11-20. On July 26, 2006, the Appeals Council denied review. AR 6-10.

Hearing Testimony

ALJ Teehan held a hearing on October 25, 2005, in Fresno, California. Plaintiff appeared with her attorney, Robert Ishikawa. Vocational expert ("VE") Thomas Dachelet also appeared and testified. AR 443.

Plaintiff testified that she was 52 years old at the time of the hearing and obtained her GED. She last worked in June 2003. AR 452.

Plaintiff explained that she could not return to work because of pain in her wrist, back and neck. She has constant pain in her neck and shoulders that travels to the top of her head and her arm. The pain causes numbness and shaking. AR 459-460. She also has muscle spasms in her back "every few minutes, every hour" that make it difficult for her to breathe. AR 460. Her wrist hurts when she pulls it up, both thumbs hurt and the middle finger on her left hand is locked. She can't pick up a gallon of milk because of the pain. AR 461. Holding a toothbrush hurts her hands and applying pressure when shampooing her hair hurts her wrist. With pain, she can lift a gallon of milk with two hands. AR 463. She cannot finger keys on a keyboard because of the pain and her inability to move her middle finger. She breaks a lot of glasses because she drops a lot of things. AR 463-464.

She further testified that she has a lot of pain when she turns her head to the right and that 85 percent of the time, she uses her hands to support her neck. AR 464. She cannot lift her right

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

arm because of pain in her shoulder and cannot reach very well with her right arm.  AR 465.  She cannot move either hand on a repetitive basis.  AR 466.

Plaintiff was diagnosed with fibromyalgia and testified that it affects all muscles in her body, but her back is the worst.  She has severe muscle spasms in her legs, hands and arms.  She has weakness in her legs which makes it difficult to walk.  She thought she could walk a half block.  AR 466.  She thought she could sit for "not even, you know, 20 minutes, 30 minutes," and could sit for no more than two hours.  AR 467.

Plaintiff is able to drive and drove to the hearing from San Jose.  AR 468.  Plaintiff has two children, a son who is 29 and single and a daughter who is 22 and in prison.  AR 471.  She expects her daughter to be in prison for up to three years and has applied for guardianship of her granddaughter, Sasha.  AR 472.

Plaintiff further testified that she gets severe headaches every other day or so, depending on her physical activity.  AR 472.  She has to get shots for her headaches about once every four months.  AR 473.  Her stomach problems began in 2001 or 2002 and she received treatment for a bleeding ulcer.  She relapsed in April 2004 and was treated again.  Plaintiff stated that her stomach has been "very good" and she is now able to eat.  AR 474.

Her neck hurts severely when she wakes up in the morning and she sprays her neck and hands with "Stop Pain" spray and then makes it to the bathroom to apply warm water.  After she eats something, she starts taking Tylenol, which is all she can take.  She keeps her spray and a heating pad with her at all times.  She gets dressed and takes a shower, but then has to lay down because of severe pains in her back and neck.  AR 475.  She and her son take care of Sasha, and her first husband and his wife also help.  AR 476.  Her cousin cleans and her son helps her do everything.  AR 476.  Sasha just turned four, but she helps Plaintiff load the dishwasher and get dress and undressed.  They cook microwave food.  Sasha gives herself a bath, but they do each other's hair.  Her son does the laundry.  AR 477.

Sasha is with her most of the day and Plaintiff prepares her meals.  AR 478.  Plaintiff puts her to bed at night and takes her shopping for clothes.  AR 479-480.  She takes her to the

pediatrician when she is sick. AR 480. She can only take care of Sasha with the help of her family. AR 482.

Plaintiff testified that her muscle relaxers make her very sleepy and she sometimes has to call her son for help. AR 480. She has worn splints on her wrists for the past three years. AR 483.

In responding to the ALJ's question, Plaintiff testified that she renewed her driver's license this year and did not indicate that she had any problems that would affect her driving. Despite this, she testified that she does have problems driving and doesn't drive if she doesn't have to. She has trouble turning to the right and has severe pains in her wrist. AR 483. She admitted that she was not telling the truth when she applied for her driver's license, but explained that at the time, she only needed it for identification purposes. She drives Sasha around and feels it is safe because it is only for short distances. AR 485.

VE Dachelet testified that Plaintiff's past relevant work included in-home health aide, which was medium work, fast-food manager, which was light work, a clown ("demonstrator" per the Dictionary of Occupational Titles"), which was light work, and sign painter, which was light work. AR 490-496.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work, who could do full-time work with normal breaks and without limitations. The VE testified that this person could perform all of Plaintiff's past work. AR 501-502.

If this person could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours and sit for six hours in an eight hour day with no further limitations, she could perform all of Plaintiff's past relevant work. AR 502.

For the third hypothetical, the ALJ asked the VE to assume that this person had the following additional limitations: could occasionally carry a gallon of milk, and half of that frequently, could perform occasional fingering and manipulation, could perform occasional pulling and frequent pushing, could not lift the right arm over the shoulder, could not use the left or right arm on a repetitive basis, could walk for one-half block, stand for 20 to 30 minutes, and

could sit for two hours with a sit/stand option. This person could not perform Plaintiff's past work, primarily because of the limitation on left and right repetitive hand use. AR 503-504.

For the fourth hypothetical, the ALJ asked the VE to assume a person with the following restrictions: could lift five pounds occasionally and less than five pounds frequently, could stand and walk for two hours, for a maximum of 15 minutes at a time, could sit for three hours in an eight-hour day without interruption, could occasionally climb, stoop, kneel, balance, crouch and crawl, and could occasionally reach, handle, feel, push and pull, and had to avoid heights, moving machinery and extremes in temperatures. This person could not perform Plaintiff's past relevant work or any other work in the national economy. AR 504-505.

Medical Evidence

On March 6, 2003, Plaintiff underwent motor and sensory nerve conduction studies of her upper extremities. The studies were normal and there was no evidence of compression neuropathy (carpal tunnel syndrome), polyneuropathy or ongoing cervical radiculopathy. AR 135.

In 2003, Plaintiff underwent testing for a history of abdominal pain. AR 174-183. In October 2003, she was hospitalized for surgical treatment of acute abdominal symptoms, which were determined to be a perforated duodenal ulcer. AR 240-298.

Plaintiff received on-going treatment from Central Valley Family Health, including treatment from Kenneth W. Melashenko, M.D. She was treated for a variety of complaints, including pain in her hands, wrists, right shoulder, and neck and back, and was diagnosed with osteoarthritis, fibromyalgia, bursitis of the shoulder and degenerative disc disease. AR 185-205, 314-358, 361-419.

X-rays of Plaintiff's lumbar spine performed on September 2, 2003, were negative. AR 189. A CT scan on the same day revealed broad-based disc bulges at L4-5 and to a lesser degree at L5-S1, and bilateral extension of the disc bulge at L4-5 into the neural foramina. AR 190.

Zaky K. Moussa, M.D., performed a consultive examination on December 19, 2003. Plaintiff complained of arthritis in her hands and pain and weakness all over her body. Range of motion was within normal limits for all extremities and her back. Plaintiff was able to toe, heel

5

and tandem gait without any difficulty. There was no tenderness to palpation or paracervical spasm in her cervical spine. There was no tenderness to palpation of the wrists. She had good tone bilaterally and muscle strength was 5/5 in all extremities. Sensation was grossly intact. Dr. Moussa diagnosed fibromyalgia. However, he believed that Plaintiff's symptoms were exaggerated compared to the physical findings. He opined that Plaintiff could perform full time work with normal breaks, without limitation. AR 299-301.

On February 18, 2004, State Agency physician James V. Glaser, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Glaser opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk for about six hours, and sit for about six hours. She was unlimited in pushing and pulling and had no further limitations. AR 304-311. Dr. Glaser explained that since Plaintiff had a history of fibromyalgia and was receiving treatment, it was reasonable to restrict her to medium work. AR 313. These findings were affirmed on August 4, 2004, by State Agency physician James B. Peery, M.D. AR 311.

On April 7, 2004, radiologic studies of Plaintiff's hands revealed minimal bilateral osteoarthritis. AR 336.

On April 18, 2004, Plaintiff underwent an endoscopy that revealed an acute pyloric duodenal ulcer, gastritis of the antrum, and Grade B distal and middle esophagitis with ulceration. AR 325-328.

Plaintiff underwent x-rays of her hip and lumbar spine on July 29, 2004, after a fall. The x-rays were negative. AR 314-315.

On August 14, 2004, Plaintiff underwent x-rays of her right shoulder. The x-rays were negative. AR 365.

On October 29, 2004, Plaintiff underwent a CT scan of her right shoulder. The images revealed "suspect old Hill-Sachs deformity" but were otherwise unremarkable. AR 364.

X-rays of Plaintiff's cervical spine taken on December 28, 2004, revealed probable disc disease. AR 363.

On March 10, 2005, Plaintiff underwent an MRI of her cervical spine. The test revealed degenerative disc disease at L4-5, C5-6 and C6-7 without apparent localized disc herniation; narrowing of the central spinal canal without cord or signal abnormality; and narrowing on the right C4-5, C5-6 and C6-7, with maximal narrowing at C4-5. AR 362.

Dr. Melashenko completed a Medical Assessment of Ability to do Work-Related Activities form on October 14, 2005. He opined that Plaintiff could occasionally carry five pounds and less than five pounds frequently, and could stand and/or walk for 15 minutes at a time, for a total of two hours. She could sit for three hours a day and could occasionally climb, stoop, kneel, balance, crouch or crawl. Dr. Melashenko assigned unspecified limitations on reaching, handling, feeling, pushing and pulling due to right shoulder pain. AR 420-422.

ALJ's Findings

After reviewing the medical evidence, the ALJ determined that Plaintiff had the severe impairments of lumbar and cervical degenerative disc disease and fibromyalgia. He did not find Plaintiff's allegations to be credible. Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently, and to stand, walk and sit for about six hours in an eight hour day, with normal breaks. Based on the testimony of the VE, the ALJ determined that Plaintiff could return to all of her past relevant work and was therefore not disabled. AR 18-19.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (lumbar and cervical degenerative disc disease and fibromyalgia) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) retains the RFC to perform her past relevant work. AR 18-20.

Plaintiff argues that the ALJ (1) improperly rejected Dr. Melashenko's October 2005 opinion; and (2) improperly assessed her credibility.

**DISCUSSION**

A.      Dr. Melashenko's Opinion

Plaintiff contends that the ALJ improperly rejected Dr. Melashenko's October 2005, assessment in favor of the opinions of Dr. Moussa, the consultive examiner, and Drs. Glaser and Peery, the State Agency physicians.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).  Even when contradicted by an opinion of an examining

physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

Here, Dr. Melashenko's opinion was contradicted by the opinions of Dr. Moussa, Dr. Glaser and Dr. Peery. The ALJ was therefore entitled to reject it so long as he set forth specific and legitimate reasons supported by substantial evidence.

In rejecting Dr. Melashenko's opinion, the ALJ first explained that despite Plaintiff's allegations of totally disabling symptoms, no treating source imposed any restrictions until Dr. Melashenko's October 2005, assessment. AR 17. He next explained that Dr. Melashenko appeared to rely heavily on Plaintiff's subjective complaints:

> The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints and, therefore, the accuracy of this assessment.

AR 17. An ALJ may also reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989). As discussed below, the ALJ correctly dismissed Plaintiff's subjective complaints and was entitled to discredit the opinion on this basis.

The ALJ next explained that Dr. Melashenko failed to provide any medical findings to support his assessment:

> In support of severe sitting and postural restrictions he gives only lumbar disc disease as a medical finding in support of his assessment. He further suggests that the lumbar disc disease is somehow causative of the claimant's right shoulder pain, which seems to be an inconsistent statement.

AR 17. Indeed, an examination of the questionnaire reveals that in support of his assessed lifting and standing/walking restrictions, the space provided for listing supporting medical findings is left blank. AR 420. In support of the sitting restriction and postural restrictions, Dr. Melashenko simply states, "lumbar disc disease." As to the reaching restrictions, which are unspecified, Dr. Melashenko states that the limitations are affected by Plaintiff's right shoulder pain but are supported by her lumbar disc disease. AR 421. A brief and conclusionary form opinion which

10

lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); 20 C.F.R. § 404.1527(d)(3).  Dr. Melashenko's extreme limitations were not supported in the report itself or by his treatment notes.

Plaintiff points to portions of the medical record that she believes support Dr. Melashenko's findings.  For example, she state that his records are "filled with references to muscle spasms and lumbar, cervical, and shoulder pain, as well as hand pain due to arthritis."  Opening Brief, at 4.  Such notations in the medical record are, however, based almost exclusively on Plaintiff's reports.  For example, treatment notes from May 2004 state that Plaintiff "c/o mid and low back muscle spasms."  AR 316.  There are no objective findings, though.  Plaintiff also contends that the September 2003, CT scan, April 2004, x-rays, and March 2005, MRI support Dr. Melashanko's limitations.  While these are objective tests that demonstrate objective findings, they do not necessarily translate into Dr. Melashenko's extreme limitations.  The mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Next, the ALJ compares Dr. Melashenko's limitations to the overall medical record and concludes that they are not supported by clinical, diagnostic or laboratory findings "in that the record reflects minimal findings."  AR 17.  See 20 C.F.R. § 404.1527(d)(4) (providing that more weight will be given to opinions that are consistent with the record as a whole).  The ALJ recognized that the overall record supported some functional limitations, but not those set forth by Dr. Melashenko.  Similarly, the ALJ explained that the limitations are not supported by Dr. Melashenko's own treatment notes:

> The assessment is also inconsistent with the treatment of the claimant by Dr. Melashenko, a Family Practitioner, in that at no time did he refer the claimant to orthopedic, neurological or rheumatological specialists for more aggressive treatment nor did he recommend treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic.

AR 17.

After setting forth his reasons for rejecting Dr. Melashenko's opinion, the ALJ explained that the opinions of the State Agency physicians were consistent with the medical evidence,

1  "considering Plaintiff's subjective complaints in light of the minimal objective physical
2  findings," and he therefore gave them great weight.  AR 16-17.  The RFC finding was also
3  consistent with the opinion of Dr. Moussa.  AR 15-16.

4        In adopting the opinions of Dr. Moussa and the State Agency physicians over that of Dr.
5  Melashenko, the ALJ set forth specific and legitimate reasons, stated above, that were supported
6  by substantial evidence.  In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit
7  reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an
8  examining physician over that of a treating physician.  "When an examining physician relies on
9  the same clinical findings as a treating physician, but differs only in his or her conclusions, the
10  conclusions of the examining physician are not '"substantial evidence."'  *Orn,* 495 F.3d at 632;
11  *Murray*, 722 F.2d at 501-502.  "By contrast, when an examining physician provides 'independent
12  clinical findings that differ from the findings of the treating physician' such findings are
13  'substantial evidence.'"  *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th
14  Cir.1985).  Independent clinical findings can be either (1) diagnoses that differ from those
15  offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*,
16  749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the
17  treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

18        Here, Dr. Moussa relied on his own independent clinical findings that differed from those
19  of Dr. Melashanko.  While Dr. Melashenko's records contained little, if any, objective findings,
20  Dr. Moussa's examination revealed normal range of motion in all extremities and her back, no
21  tenderness to palpation or paracervical spasm in her cervical spine, and no tenderness to
22  palpation of the wrists.  Plaintiff was able to toe, heel and tandem gait without any difficulty, she
23  had good tone bilaterally, muscle strength was 5/5 in all extremities and sensation was grossly
24  intact.  AR 299-301.

25        The ALJ was also entitled to adopt the opinions of the State Agency physicians.
26  Although the opinions of nonexamining physicians cannot by themselves constitute substantial
27  evidence, the ALJ is permitted to reject the treating physician's opinion based in part on a
28  nonexamining physician's opinion.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th

Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52. Similarly, the ALJ here did not rely *solely* on the opinions of Dr. Glaser and Dr. Peery. Instead, he set forth the minimal objective findings, including findings on examination and findings on diagnostic testing, the contrary findings of Dr. Moussa, and the inconsistencies within Dr. Melashenko's report.

Plaintiff argues that Dr. Moussa's opinion was flawed, thereby making the State Agency physicians' opinions flawed based on their reliance on Dr. Moussa's examination, because he failed to review any medical records. However, Dr. Moussa's opinion was based on his own examination. That he did not review prior medical records does not render his opinion "tainted," as Plaintiff suggests. Opening Brief, at 6.

The Court therefore finds that the ALJ gave specific and legitimate reasons supported by substantial evidence in rejecting Dr. Melashenko's opinion.

B.    Plaintiff's Subjective Complaints

Next, Plaintiff argues that the ALJ failed to properly evaluate her credibility.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In rejecting Plaintiff's testimony, the ALJ first explained that there was a lack of objective medical evidence to support her allegations. AR 16. Although the ALJ cannot discredit subjective complaints solely on the basis of a lack of objective evidence, it is one factor he may examine. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). For example, Plaintiff has not received treatment consistent with a chronic pain syndrome, such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic. AR 16. The objective MRI and x-ray findings were "minimal" compared to her complaints and were not consistent with a disabling condition. AR 16. Moreover, although there is reference in the record to fibromyalgia, Plaintiff has not had any rheumatological treatment. AR 16. "Even treating physician Dr. Melashenko gives a diagnosis of lumbar disc disease." AR 16. The consultive physical examination was within normal limits. AR 16.

In her opening brief, Plaintiff first contends that the objective evidence does, in fact support her allegations. The ALJ is responsible, however, for weighing the medical evidence and determining credibility. Although Plaintiff may disagree with his conclusion, it does not render his analysis improper. Plaintiff argues that the ALJ improperly relied on Dr. Moussa's opinion that her symptoms were exaggerated because Dr. Moussa did not review the CT scan. Again, however, Dr. Moussa's opinions were based on the examination he performed on Plaintiff on the

day of her consultation. His failure to review records does not invalidate his findings. See also Batson v. Comm'r, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ may properly consider contradiction between claimant's complaints and physician's observations).

Moreover, Plaintiff contends, for the first time, that she did not receive further treatment because of her financial situation. She explains that she is impoverished and could not afford the pain treatments, and that such treatments are not provided by the County medical system. Although she testified at the hearing that she receives Medi-Cal and that her only income came from the sale of her home ($52,000), she did not state that she was financially precluded from receiving further treatment. AR 488. Of course, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds," *Orn v. Astrue*, *495* F.3d 625 (9th Cir. 2007) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995)), but the ALJ was not required to conclude as much based on Plaintiff's testimony.

The ALJ next noted that Plaintiff "had also cancelled or failed to show up for doctor appointments on a number of occasions." AR 16. The ALJ cites to four instances where Plaintiff either cancelled, rescheduled, or did not show. AR 167, 321, 334, 352. Plaintiff argues, and the Court agrees, that this is not indicative of her credibility. However, it does not render the otherwise supported determination improper. *Batson,* 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).

Finally, the ALJ examined Plaintiff's daily activities and concluded that they did not support her allegations. AR 16. For instance, although Plaintiff testified that she has problems even holding a toothbrush, she routinely drives, grasping the wheel, and drove to the hearing from her son's house in San Jose. AR 16. When she renewed her driver's license, she did not indicate that she had any problems with driving. She also testified that she drives her granddaughter in the car and would not do so if she felt that she was endangered. AR 16, 485. The ALJ may use "ordinary techniques" in addressing credibility, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

1  The ALJ also explained that Plaintiff was able to care for her granddaughter. Plaintiff makes her lunch, takes her shopping and to the doctor, drives and puts dishes in the dishwasher. AR 16. *Fair*, 885 F.2d at 604 (ALJ may use conflict between activities and testimony as a tool in credibility assessment).

Therefore, the Court concludes that the ALJ's credibility analysis was supported by findings sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). Her claim is without merit and should be denied.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Patricia Sanchez.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 9, 2007**          /s/ **Dennis L. Beck**
                                UNITED STATES MAGISTRATE JUDGE